Argued and submitted December 18, 1991; resubmitted In Banc October 14, affirmed November 12, 1992, reconsideration denied March 17, petition for review allowed April 20, 1993 (316 Or 142)

# PORTLAND GENERAL ELECTRIC COMPANY,
*Petitioner,*

*v.*

# BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

## (03-89; CA A51280)

842 P2d 419

John R. Faust, Jr., Portland, argued the cause for petitioner. With him on the brief were Schwabe, Williamson & Wyatt and Mary Ellen Hoffman, Portland.

Timothy J. Vanagas, Gresham, argued the cause for respondent. With him on the brief were Jennings & Vanagas, Gresham, Lawrence I. Evans, Michael S. Evans, and Grenley, Rotenberg, et al, Portland.

Monica A. Smith, Elizabeth McKanna and Bennett & Durham, Portland, filed a brief *amicus curiae* for IBEW Local 125, Oregon Education Association, AFSCME Council No. 75 and Oregon AFL-CIO.

De MUNIZ, J.

Joseph, C. J., dissenting.

Edmonds, J., dissenting.

## De MUNIZ, J.

■      Petitioner seeks review of an order of the Commissioner of the Bureau of Labor and Industries (BOLI) that held that petitioner had engaged in an unlawful employment practice. ORS 659.360. It assigns error to BOLI's conclusion that an employee was entitled to use his accrued paid sick leave as parental leave, even though he was not "sick" within the definition of his employment agreement or company policy.[1] We affirm.

The employee is a service inspector and a member of the International Brotherhood of Electrical Workers (IBEW). In March, 1988, he requested 12 weeks of parental leave, composed of two weeks of accrued vacation leave, three days of accrued sick leave available for elective surgery and nine weeks and two days of other accrued sick leave. Petitioner denied the request, because the collective bargaining agreement in effect between petitioner and IBEW provides that sick leave is to be used only when an employee is actually sick or injured.[2] Petitioner later granted the employee's amended request for 10 weeks of parental leave, which substituted seven weeks and two days unpaid leave for the nine weeks and two days paid sick leave.

BOLI's decision was based on ORS 659.360(3), which provides:

"The employee seeking parental leave *shall be entitled to utilize any accrued* vacation leave, *sick leave* or other compensatory leave, paid or unpaid, *during the parental leave.* The employer may require the employee seeking parental leave to utilize any accrued leave during the parental leave unless otherwise provided by an agreement of the employer

---

[1] In *Oregon Bankers Assn. v. Bureau of Labor and Ind.*, 102 Or App 539, 796 P2d 366 (1990), we examined the validity of BOLI's parental leave rules, OAR 839-07-800 through OAR 839-07-875, but could not address the issues raised here, because that proceeding was a rule challenge under ORS 183.400(4)(b). Our scope of review was limited to the validity of the rules without regard to how they might be applied. 102 Or App at 544.

[2] That agreement provides:

"Any sickness which prevents an employee from performing any work for pay is considered as sickness under this plan. A non-occupational accident which prevents an employee from performing any work for pay is also considered as being sickness under this plan."

and the employee, by collective bargaining agreement or by employer policy." (Emphasis supplied.)

Petitioner argues that the emphasized language means that an employee may use paid sick leave during parental leave only if the employee is sick, as defined by the collective bargaining agreement.[3] BOLI concluded that the employee's right to take that leave is not subject to the preconditions for use of sick leave contained in the collective bargaining agreement.

We begin with the language of the statute. *Whipple v. Howser*, 291 Or 475, 479, 632 P2d 782 (1981). It says that an employee "shall be entitled to utilize *any accrued* * * * sick leave * * * during the parental leave." (Emphasis supplied.) "Entitled to utilize" must mean "has a right to use." The only limit on that right to use sick leave during a parental leave is that the leave have accrued. Period. The provision simply says that, if the leave is accrued, the employee has a right to use it during the parental leave. That should be the end to a simple statutory question.

However, petitioner argues, and the dissenters agree, that the right to use paid sick leave during the parental leave is subject to the preconditions for use of the leave provided in the collective bargaining agreement. The easy answer to that contention is that the statute does not include that limitation, and we are not at liberty to add it. ORS 174.010. In addition, careful review of the statutory language, both in isolation and in context, leads inescapably to the conclusion that that interpretation is inconsistent with legislative intent.

The sole modifier before "vacation leave" and "sick leave" is "accrued." That modifier has a definite meaning in the employment context. As the *amicus* brief so ably explains, there is a difference between "accrued" leave, which is the maturation or vesting of the right to a benefit, usually based on completion of periods of employment; "eligibility" for leave or other benefits, which is the meeting of the threshold

___

[3] The statutory references to collective bargaining agreements often also include references to agreements between the employer and the employee and to employer policy. References in this opinion to any one of those are intended to incorporate all three terms.

legal requirements, such as permanent employment versus temporary employment; and "entitlement" to use benefits, which is the result of fulfillment of preconditions to use, such as illness in the case of sick leave.[4] By providing a single precondition for use of sick leave during parental leave, that the leave have *accrued*, the legislature did *not* limit the use of that leave to sick leave the employee would otherwise be entitled to use under a collective bargaining agreement.[5]

■ ■    Furthermore, the contrast between the two sentences in subsection (3) makes it patently clear that the employee's right to use accrued sick leave is not otherwise limited by the collective bargaining agreement. The first sentence, which sets out the *employee's* right to use accrued leave, does not refer to employment agreements:

> "The employee seeking parental leave *shall be entitled to utilize any accrued* vacation leave, *sick leave* or other

---

[4] Petitioner's own agreement with IBEW employs the terms in that way. An employee's *eligibility* for sick leave benefits is governed by paragraph 12.3:

> "ELIGIBILITY OF EMPLOYEES.  All Regular, Probationary, or Temporary Employees covered by this Agreement who have completed six (6) months' service with the Company within one (1) year of their being employed *shall become eligible* for benefits on the first (1st) day of the month after the completion of such six (6) months' service." (Emphasis supplied.)

*Accrual*, on the other hand, is a separate concept, covered by a different paragraph:

> "12.9 AMOUNT OF BENEFITS.  *Upon becoming eligible* for benefits under Section 12.3, an employee shall be entitled to *accrue sick leave* at the rate of one day for each month commencing with the first day of employment. All of any current year's benefits unused in that year shall be carried forward at the end of such year, to be added to any accumulated prior benefits." (Emphasis supplied.)

[5] When the legislature intended collective bargaining agreements to govern in the Parental Leave Law, it specifically said so. For example, the second sentence of ORS 659.360(3) provides:

> "The employer may require the employee seeking parental leave to utilize any accrued leave during the parental leave *unless otherwise provided by an agreement of the employer and the employee, by collective bargaining agreement or by employer policy*." (Emphasis supplied.)

Similarly, subsection (6) provides:

> "The parental leave required by subsection (1) of this section is not required to be granted with pay *unless so specified by agreement of the employer and employee, by collective bargaining agreement or by employer policy*." (Emphasis supplied.)

Both of those provisions, which are only a sample of the specific references in the Parental Leave Law to collective bargaining agreements, show that the legislature knew how to make its provisions subject to those agreements when that was its intent.

compensatory leave, paid or unpaid, *during the parental leave.*" (Emphasis supplied.)

In contrast, the second sentence says:

"The employer may require the employee seeking parental leave to utilize any accrued leave during the parental leave *unless otherwise provided by an agreement of the employer and the employee, by collective bargaining agreement or by employer policy.*" (Emphasis supplied.)

Thus, the *employer's* right to require an employee to use accrued leave is specifically limited by any contrary agreement. When the legislature includes limiting language in one sentence of a subsection and excludes it in another, we can divine an intent that the limitation apply only as specified.

Our reading of ORS 659.360(3) comports with ORS 659.360(6):

"The parental leave required by subsection (1) of this section is not required to be granted with pay unless so specified by agreement of the employer and employee, by collective bargaining agreement or by employer policy."

The subsection shows the distinction between a new kind of mandated leave, parental leave, and other types of leave that an employee may have accrued. Although parental leave *per se* need not be paid, an employee is entitled to use other types of leave, paid or unpaid, during the 12-week parental leave period. Subsection (6) makes clear that an employer need not provide a *new* type of *paid* leave in addition to the other types of leave already provided, unless required by an employment agreement. Regardless of the employment agreement, however, the employer must allow an employee a 12-week period for parental leave, which is unpaid unless the employee has accrued other paid leave *that the employee elects to take or that the employer requires the employee to take* during that period.

Finally, to the extent that there is any ambiguity, the legislative history supports BOLI's and our reading. The original draft of the bill provided that "[t]he leave required by subsection (1) of this Act may be unpaid leave or any other leave the employer and employe agree upon or any leave specified or allowed by any collective bargaining agreement." That language was changed to say: "The leave, with preference given to accumulated sick leave and vacation leave,

required by subsection (1) of this section may be paid or unpaid leave or any other leave the employer and employe agree upon or any leave specified or allowed by any collective bargaining agreement." Finally, that subsection was changed and subsection (6) added, to read essentially as it now reads. Representative Kopetski explained that the final change was to clarify the meaning in the second version:

> "The second change is * * * to clarify, * * * to make certain that any sick leave, vacation leave, that that will run *concurrently* with the 12 weeks. *And so this 12 weeks is not added on to any vacation time or sick leave that the individual would have.*" Tape Recording, House Committee on Labor, March 18, 1987, Tape 61, Side B. (Emphasis supplied.)

The language of the first draft allowed the leave to be unpaid *unless* otherwise agreed. Under the second draft language, the legislature indicated a preference for accumulated sick leave and vacation leave, *or* any other leave agreed on by the employer and employee. Clearly, it was anticipated that the employee would use accumulated sick and vacation leave during the parental leave, *i.e.*, concurrently with, rather than as a replacement for, the mandated leave. The changes in the final draft added the employer's right to *require* the employee to use that leave, if the employee did not elect to do so, in order to prevent extended absences beyond 12 weeks. It also clarified that the legislature did not intend a newly mandated paid parental leave, but that an employment agreement could provide for paid parental leave.

■ A careful reading of the Parental Leave Law persuades us that the legislature found a balance between the employee's need for time off to care for new family members during the critical first weeks and the employer's need for a stable work force. The law provides that an employee must be granted up to 12 weeks leave, if requested, and can elect to use any accrued leave, paid or unpaid, during that 12-week period. On the other hand, if the employee does not make the election to use accrued leave, the employer can force the employee to use the leave, subject to any agreement limiting that right. The purpose was to eliminate the danger that the employee might take 12 weeks of unpaid parental leave, during which time a replacement might need to be found, and then might seek to tack on a period thereafter in which the

employee would use other accrued leave, necessitating additional replacement. The statutory scheme assures the employer that the employee is entitled to be gone 12 weeks at the maximum, and not 12 weeks in addition to any other accrued leave that the employee might be entitled to take.

The dissenters would rewrite the statute to say:

> "The employee seeking parental leave *may* use any accrued * * * sick leave * * * during the parental leave, *if the employee would be entitled otherwise to use that leave as specified in an agreement of the employer and the employee, a collective bargaining agreement or by employer policy.*"

In other words, they would engraft the qualification contained in the second sentence of subsection (3) onto the first sentence. The statute imposes no such qualification; the legislature chose clear, strong, compulsory language to assure that accrued leave, paid or unpaid, would be available for employees' use during parental leave. The qualification that the dissents propose is not in the statute, and this court cannot rewrite legislation in accordance with a policy choice that *it* may think is appropriate. ORS 174.010. That policy choice is for the legislature, not for the courts.

Affirmed.

**JOSEPH, C. J.,** dissenting.

In *State v. Morgan*, 116 Or App 338, 346, 842 P2d 406 (1992), we criticized both a litigant and the legislature for their attempts in the sentencing guidelines to "require us to move beyond our role of interpreting legislation to enacting it." We explained that "[i]t is not for the judiciary to decide which policies should prevail. That is for the legislature." The author of those astute words is also the author of the majority opinion in this case. Unfortunately, he appears not to recognize that the proper allocation of powers and responsibilities between the legislative and judicial branches is every bit the same in the context of the parental leave statute as it is in the sentencing guidelines context. The result is that the majority amends ORS 659.360(3) to say what it thinks it ought to say instead of what the legislature did say.

The majority states, correctly, that our task in construing legislation begins with the language of the statute. It

also acknowledges, correctly, that that is where the inquiry should end when the language is clear. However, the majority does not appreciate what seems to me to be implicit in those principles: Our job is to read the clear language to say what it clearly does say. Instead, the majority makes a wilful beeline to the opposite reading.

The majority dwells on the word "accrued," which modifies vacation, sick and other compensatory leave in the statute. It concludes that "[t]he only limit on that right to use sick leave during a parental leave is that the leave have accrued." 116 Or App at 359. That conclusion is correct, but it leads nowhere. The majority goes on to extrapolate from that conclusion a holding that the accrued sick leave may be used *as* paid parental leave. The statute simply does not say that. It says that the accrued sick leave may be used *during* the parental leave. Nothing in the language of the statute even remotely suggests that accrued sick leave may be applied to a kind of leave other than the one for which it *has accrued* simply by reason of a happenstance that the employee is enjoying a different kind of leave while some of the accrued sick time remains.

There are plausible policy reasons why the legislature may have written the statute to say what it unambiguously does, *e.g.*, the intertie with the collective bargaining process or to assure that employees who become ill while on parental leave be credited with the paid sick leave that they have earned. It is also possible that the legislature meant to say what BOLI and the majority interpret it to say. If so, it failed. That provides no justification for us to rewrite the statute and the parties' collective bargaining agreement. With regard to the latter rewriting, one would think that the legislature could not do that constitutionally. The majority holds that BOLI can. That is politically (*and* legally) a very dangerous idea.

I dissent and join in the dissent of Edmonds, J.

Richardson, J., and Warren, J., join in this dissent.

**EDMONDS, J.,** dissenting.

I suggest that ORS 659.360(3) is, on its face, equally susceptible to the interpretations proposed by the majority

and Chief Judge Joseph in his dissent. What persuades me that the legislature intended that the terms of a collective bargaining agreement control over the election of an employee are the previous drafts of the statute. There is a consistent thread in them that the legislature intended parental leave to be unpaid unless otherwise agreed by the employer and employee or unless controlled by a collective bargaining agreement. The collective bargaining agreement controls.

The majority concedes that the final draft was not intended to change the meaning of the statute but to clarify it so that the parental leave would not be added to any vacation or sick leave. That change created the ambiguity that is at the heart of the dispute over the meaning of the statute but did not change what the legislature intended. Both sentences in ORS 659.360(3) must be read together in the light of the legislative history. When that is done, it is apparent that BOLI erred when it held that petitioner had engaged in an unlawful employment practice when it adhered to the terms of the collective bargaining agreement.

Joseph, C. J., joins in this dissent.