Argued and submitted February 26, reversed and remanded for further proceedings October 16, 2002

In the Matter of the Guardianship of
Brittany Leeann Wilde, a Minor Child.

Michael Lee KELLEY
and Debra Faye Kelley,
*Respondents,*

*v.*

Kim GIBSON,
*Appellant.*

9940157; A109753 (Control)
(Cases Consolidated)

In the Matter of the Guardianship of
Stephanie K. Wilde and Dominique N. Gibson,
Minor Children.

Norman E. WAGNER
and Darla K. Wagner,
*Respondents,*

*v.*

Kim GIBSON,
*Appellant.*

9940139; A109754

In the Matter of Stephanie Wilde,
Dominique Gibson and Brittany L. Wilde,
Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF BENTON COUNTY,
*Respondent,*

*v.*

Kim GIBSON,
*Appellant.*

9570038, 9570039, 1110; A109755

56 P3d 925

George W. Kelly argued the cause and filed the brief for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent State ex rel Juvenile Department of Benton County. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Locke A. Williams filed the brief for respondents Michael Lee Kelley and Debra Faye Kelley.

Melvin T. Rollema filed the brief for respondents Norman E. Wagner and Darla K. Wagner.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

In these consolidated proceedings, mother appeals (1) a judgment appointing respondents Michael and Debra Kelley (the Kelleys) guardians of mother's daughter Brittany, ORS 125.305; (2) a judgment appointing respondents Norman and Darla Wagner (the Wagners) guardians of mother's daughter Stephanie and son Dominique, ORS 125.305; and (3) an order in the juvenile dependency permanency matter reflecting the allowance of the guardianships. ORS 419B.476. We review *de novo*, ORS 19.415(3); ORS 419A.200(5), and reverse and remand.

Because of our disposition here, we give only a broad outline of the facts. In October 1995, what was then the State Office for Services to Children and Families (SCF) filed dependency petitions for each of mother's three children. Brittany, then age six, was placed in the temporary custody of the Kelleys. Stephanie, then age four, and Dominique, then age one, were placed in the temporary custody of the Wagners. In 1997, SCF filed a petition to terminate mother's rights with respect to all three children. After a trial, the petition was denied. The juvenile court, however, continued its jurisdiction over the children.

In August 1999, the Wagners filed a petition to be appointed guardians of Stephanie and Dominique under the general guardianship statute, ORS 125.305. In October 1999, the Kelleys filed a similar petition to be appointed guardian of Brittany.

The juvenile court consolidated the two guardianship petitions with the juvenile proceeding. In February 2000, the court held a consolidated guardianship and permanency hearing. Applying ORS 125.305, the court found that all three children needed a guardian and that appointment of a guardian was necessary as a means of providing continuing care and supervision. The court appointed the Kelleys guardians of Brittany and the Wagners guardians of Stephanie and Dominique.

On appeal, mother assigns error to the court's granting of the guardianships. Mother focuses on the meaning of

the word "need" in ORS 125.305, arguing that "need" must be interpreted to mean "something more" than circumstances that are incident to poverty; otherwise, parents afflicted by poverty would never be safe from the appointment of third-party guardians. Mother next asserts that the record in this case lacks that "something more." The Kelleys, the Wagners, and SCF all argue that the record demonstrates, by clear and convincing evidence, that the children need a guardian.

At oral argument, we requested supplemental briefing regarding ORS 419B.365 (1997), which provided for permanent guardianship under the juvenile code.[1] The standards for establishing guardianships under ORS 419B.365 and ORS 125.305[2] are different. The most important substantive difference between ORS 419B.365 and ORS 125.305 is that ORS 419B.365(4) provides that the "grounds for

---

[1] ORS 419B.365 was amended after the filing of the guardianship petitions, and therefore the 1997 version applies. All further references are to the 1997 version, which provided, in part:

"(1) At any time following establishment of jurisdiction and wardship under ORS 419B.100, but prior to filing of a petition under ORS 419B.500 [providing for termination of parental rights], the court may hear a petition for permanent guardianship. If the state chooses not to participate in a proceeding initiated by an intervenor under ORS 419B.115, the state is not foreclosed from filing a subsequent action should the intervenor's petition be denied.

"(2) Except as otherwise provided in this section, the juvenile court shall hear the permanent guardianship case and follow the procedures in ORS chapter 125.

"* * * * *

"(4) The grounds for granting a permanent guardianship are the same as those for termination of parental rights.

"(5) The court shall grant a permanent guardianship if it finds by clear and convincing evidence that:

"(a) The grounds cited in the petition are true; and

"(b) It is in the best interest of the child that the parent never have physical custody of the child but that other parental rights and duties should not be terminated.

"(6) A person appointed permanent guardian has the duties and authority of a guardian appointed under ORS chapter 125."

[2] ORS 125.305(1) provides, in part:

"[T]he court may appoint a guardian as requested if the court determines by clear and convincing evidence that:

"(a) The respondent is a minor in need of a guardian * * * [and]

"(b) The appointment is necessary as a means of providing continuing care and supervision of the respondent[.]"

granting a permanent guardianship are the same as those for termination of parental rights," *i.e.*, extreme conduct, ORS 419B.502; unfitness, ORS 419B.504; neglect, ORS 419B.506; or abandonment, ORS 419B.508. ORS 125.305 does not require that any of those circumstances be shown. Rather, ORS 125.305 requires only that "the minor is in need of a guardian" and that appointment of a guardian is necessary.

While neither the Kelleys nor the Wagners filed a supplemental brief, mother and SCF did. Mother argues that the juvenile court lacked jurisdiction to appoint guardians under ORS 125.305. According to mother, the juvenile court has exclusive jurisdiction over dependency cases, and ORS 419B.365 provides the only method for establishing permanent guardianships. Mother also asserts that, as a matter of statutory interpretation, because the general guardianship and juvenile guardianship statutes are related and ORS 419B.365 is more specific than ORS 125.305, ORS 419B.365 controls. SCF argues that ORS 419B.806 authorized the juvenile court to hear the guardianship petitions under ORS 125.305.

■■ It is necessary to restate the issue slightly because of the numerous ways the term "jurisdiction" is used. There is no question that the trial court had jurisdiction over the children. Rather, "jurisdiction" in this situation refers to the trial court's authority to wear various "hats." That is, was the trial court acting as a juvenile court, a probate court, or both? By granting the guardianships under ORS 125.305, the trial court appears to have been acting as a probate court despite having previously established jurisdiction as a juvenile court. Because proceedings under the juvenile code are *sui generis*, a juvenile court's actions must be authorized by the statutes that created it. *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 575, 857 P2d 842 (1993). The question in this case is whether the trial court, having established jurisdiction as a juvenile court, also had the authority under the juvenile code to act as a probate court.

Resolution of that issue requires interpretation of the various statutes, following the familiar template of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). When interpreting a statute, our goal is to determine

the legislature's intent. At the first level of analysis, we examine the statute's text and context. *Id.* at 611. Context includes other related statutes. *Id.*

We begin with ORS 419B.100, which provides that "the juvenile court has exclusive and original jurisdiction in any case involving a person who is under 18 years of age" and, among other things, "whose condition or circumstances are such as to endanger the welfare of the person." Subject to exceptions not relevant here, the jurisdiction of the juvenile court attaches when the child is taken into protective custody. ORS 419B.157. Once the juvenile court has jurisdiction, ORS chapter 419B provides a detailed framework specifying how the juvenile court shall proceed, including the circumstances under which permanent guardianships may be established.

As previously discussed, ORS 419B.365 sets out the requirements for establishing a permanent guardianship. *See State ex rel Juv. Dept. v. Burke*, 170 Or App 644, 651, 14 P3d 73 (2000), *rev den*, 331 Or 583 (2001) ("ORS 419B.365 [(1997)] * * * provided the only statutory procedure for the establishment of a 'permanent guardianship' for a child within juvenile court's jurisdiction."). Any time after the juvenile court has jurisdiction, but before the filing of a petition for termination, a petition for permanent guardianship may be filed. ORS 419B.365(1).[3] The juvenile court hears the matter and follows the procedures set forth under the general guardianship statutes, ORS chapter 125. ORS 419B.365(2). However, the "*grounds* for granting a permanent guardianship are the same as those for termination of parental rights." ORS 419B.365(4) (emphasis added). Finally, a parent is prohibited from petitioning the court to terminate the permanent guardianship once it has been established. ORS 419B.365(8).

The import of the above statutes is plain. Once jurisdiction is established in a dependency case, the juvenile court has exclusive jurisdiction. Because of that exclusive jurisdiction, in combination with the statutory nature of a juvenile

---

[3] That portion of the statute has been amended to allow petitions for guardianship to also be filed *after* a termination petition is filed if the termination petition fails to result in termination of parental rights. Or Laws 1999, ch 859, § 23.

court, a trial court that has established jurisdiction in a dependency case must find authority for its actions within the juvenile code. ORS 419B.365 provides that the procedures in granting a permanent guardianship shall be those set forth in ORS chapter 125 but that the grounds for granting a permanent guardianship shall be the same as those for termination of parental rights. We find no authority in the juvenile code that permits the juvenile court to circumvent the requirements of ORS 419B.365 by acting as a probate court and establishing a guardianship under the grounds in ORS 125.305.[4]

SCF argues that the requisite authority is found in ORS 419B.806(2), which provides:

"In any action filed in the juvenile court in which the legal or physical custody of a child is at issue and there is also pending, or adjudicated, a child custody, parenting time, visitation, restraining order, filiation or Family Abuse Prevention Act action involving the child, in a domestic relations, filiation or guardianship proceeding, the matters shall be consolidated."

Under ORS 419B.806, in order for the juvenile court to consolidate a juvenile proceeding with a guardianship proceeding, the guardianship proceeding must be *pending or adjudicated* when the dependency petition is filed in the juvenile court.

The record in this case establishes that SCF took mother's children into custody in October 1995 and that that is when the juvenile court's jurisdiction attached. There was no guardianship proceeding pending or adjudicated when the dependency petition was filed here. Therefore, ORS 419B.806 does not provide the requisite authority in this case.

---

[4] Moreover, it is arguable whether ORS 125.305 would apply were this not a dependency case. ORS 109.119 appears to address guardianships with respect to children who have a living legal parent and contains various presumptions and procedures to protect that parent's rights as enunciated by the United States Supreme Court in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000). *See Williamson v. Hunt*, 183 Or App 339, 51 P3d 694 (2002) (interpreting ORS 109.119 to conform with the dictates of *Troxel*). However, we need not decide that issue here.

SCF also tries to distinguish between temporary guardianships and permanent guardianships, arguing that ORS 125.305 involves only temporary guardianships while ORS 419B.365 involves permanent guardianships. Whether the state's characterization of the guardianship under ORS 125.305 is correct is irrelevant, because the petition was not pending at the time the juvenile court proceeding was filed. Further, the juvenile code provides for temporary guardianships under ORS 419B.370.

In summary, based on the undisputed facts in this case, we hold that the juvenile court had no authority to hear and grant the guardianship petitions brought under ORS 125.305, but was required to proceed under ORS 419B.365.

Judgments and juvenile court orders granting guardianship to Kelleys and Wagners reversed; remanded for further proceedings.